IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS L. NOWACKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-3239-CV-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Thomas L. Nowacki petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("the Commissioner"). Plaintiff applied for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. An administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including major depressive disorder, gender identity disorder, and intermittent explosive disorder, but retained the residual functional capacity ("RFC") to perform work as a cleaner, injection molding machine operator, or poultry dresser. The ALJ thus found him not disabled.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

**Background**

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff filed his pending application on March 23, 2011, alleging a disability onset date of March 12, 2010. After the Commissioner denied his application, Plaintiff requested an ALJ hearing. On January 7, 2013, the ALJ found that Plaintiff was not disabled. The Social Security Administration Appeals Council denied Plaintiff's request for

review on March 24, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

In reviewing Plaintiff's appeal, the Court issued a show cause order prompted by Federal Rule of Civil Procedure 11 (Doc. 15). Having reviewed his response (Doc. 16), the Court is satisfied that Plaintiff's error was inadvertent and considers the matter concluded. The Court turns to the merits of his appeal.

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a

2
Case 6:14-cv-03239-DGK   Document 17   Filed 05/20/15   Page 2 of 8

continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). At Step Four, the ALJ determines whether a claimant, given his RFC, can perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv).

Plaintiff argues that the ALJ rendered a flawed mental RFC at Step Four by: (1) rejecting an opinion by his treating psychiatrist; and (2) determining that his subjective testimony was not fully credible. Neither argument has merit.

**I. The ALJ properly weighed the medical opinions.**

Treating psychologist Salvador Ceniceros, M.D. ("Dr. Ceniceros") completed a mental medical source statement[1] opining that Plaintiff had moderate and marked limitations in many work-related, mental tasks. R. at 359–60. As used on the form, a "moderate" limitation is one where the "[i]mpairment levels are compatible with some, but not all, useful functioning." R. at 359. A "marked" limitation is "[m]ore than Moderate, but less than extreme[,] resulting in limitations that seriously interfere[] with the ability to function independently." R. at 359. Although the ALJ endorsed other opinions by Dr. Ceniceros, R. at 51–52, he gave the mental medical source statement "little weight." R. at 52. The ALJ still incorporated significant other mental limitations into Plaintiff's RFC determination. R. at 52. Plaintiff claims the ALJ erred in rejecting Dr. Ceniceros's medical source statement.

The ALJ must rely on medical evidence to determine a claimant's RFC. 20 C.F.R. § 416.945(a)(3). "Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control." *Bernard*, 774 F.3d at 487. An ALJ may discount or disregard a treating physician's opinion "where other medical assessments are supported by

---

[1] A medical source statement "is a form checklist that the [Commissioner] considers when determining whether a claimant is able to perform specific work-related activities." *Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011). A medical source statement "*can* be a source of objective medical evidence," but is not automatically or inherently treated as such. *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (emphasis added).

3
Case 6:14-cv-03239-DGK   Document 17   Filed 05/20/15   Page 3 of 8

better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (internal quotation marks omitted). The ALJ may also discount a treating physician's opinion that conflicts with the claimant's account of his daily activities. *Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014). Whatever weight the ALJ decides to give a physician's opinion, he must "always give good reasons." 20 C.F.R. § 416.927(c)(2).

Here, the ALJ provided "good reasons" for discounting Dr. Ceniceros's statement. *See id.* Chiefly, Dr. Ceniceros rendered other reports that undermine the credibility of his medical source statement. In January, February, May, and July of 2012 he recorded largely normal observations on mental status examinations, such as findings that Plaintiff had intact memory, normal attention, normal concentration, and linear thought. R. at 333–34, 335–36, 366–67, 368–69. These findings conflict with Dr. Ceniceros's June 2012 medical source statement, which concludes, for example, that Plaintiff's attention and concentration deficiencies seriously interfere with his ability to function independently. *See Bernard*, 774 F.3d at 487. The ALJ was thus free to reject Dr. Ceniceros's medical source statement and instead rely on his reports from January, February, May, and July of 2012, which were much more detailed and better supported. *See id.*; *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.").

Moreover, the ALJ highlighted non-medical evidence of record that is inconsistent with Dr. Ceniceros's report. Plaintiff reported attending graduate school for a degree in public administration. R. at 363. He formerly owned and operated a thrift store. R. at 342. He writes letters to local newspapers. R. at 321. He built his own computer and tried to help someone else

4

with a computer problem. R. at 80, 82–83. He follows world news. R. at 88. He attends special meetings and other community events in connection with his political volunteer work. R. at 88. Finally, he drives a car to go out alone. R. at 199. The ALJ properly found that this evidence contradicted Dr. Ceniceros's opinion that Plaintiff was seriously impaired by mental limitations. *See Turpin*, 750 F.3d at 994.

Dr. Ceniceros's opinion does not enjoy support from mental assessment findings Plaintiff cites from elsewhere in the record. William Mallot, Psy.D., recognized Plaintiff had some mental issues, such as his minor depression, anger, and anxiety, which had been improving. R. at 291. He noted that Plaintiff self-reported engaging in physical fights. R. at 338. Other times, Plaintiff admitted wanting to hurt others, but told him that he had never acted on these thoughts due to the consequences. R. at 340. Angelique Butler, Psy.D., remarked that Plaintiff "has always had symptoms of depression, anger, and anxiety," but did not elaborate on how these symptoms manifested. R. at 18. She administered him the Minnesota Multiphasic Personality Inventory–Second Edition test but held the results "invalid," which suggested that he "was over-reporting psychopathology in an attempt to appear more disturbed than he is." R. at 16. A reasonable person viewing these reports could conclude that these impairments did not impact Plaintiff's ability to function usefully or independently, meaning they were not "moderate" or "marked." *See Bernard*, 774 F.3d at 486.

Similarly, Alicia Baum, Psy.D. ("Dr. Baum"), and her pre-doctorate psychology intern Sean Sargent, M.A. ("Mr. Sargent"), reported that Plaintiff had past thoughts of hanging himself but had never acted on them. R. at 389. Dr. Baum and Mr. Sargent jointly noted that Plaintiff had "affective chaos" which might seriously limit his decision-making skills, and that he was often overloaded with more emotion than he could tolerate, which would impact his ability to

5

concentrate on and complete basic tasks. R. at 389–96. However, they cautioned that their comments were based only on a "brief intelligence screener," R. at 396, and that Plaintiff's test responses "reflect an inconsistent profile and an over-reporting of his problems." R. at 390. Accordingly, they recommended that "his profile needs to be interpreted with caution as it does not demonstrate a fully accurate description of his psychological functioning." R. at 390. Given this significant disclaimer, the ALJ was within his zone of choice to reject Dr. Ceniceros's opinion notwithstanding Dr. Baum and Mr. Sargent's opinion.

Finally, Plaintiff urges that the lack of supporting evidence does not undermine Dr. Ceniceros's statement, because "it is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal quotation marks and alterations removed). Even putting aside the fact that *Andler* was a Step One case, unlike the Step Four case here, *see id.* at 1392–94, Plaintiff has failed to adduce any evidence that he has *ever* had moderate and marked mental limitations.

The ALJ incorporated several mental limitations into Plaintiff's RFC formulation, just not to the degree posed by Dr. Ceniceros in that one medical source statement. Although Plaintiff views the medical evidence differently, "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). The Court holds that substantial evidence on the record as a whole supports the ALJ's "good reasons" for rejecting Dr. Ceniceros's mental medical source statement. 20 C.F.R. § 416.927(c)(2).

## II. The ALJ provided several proper reasons for partially discounting Plaintiff's credibility.

The ALJ partially discredited Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. R. at 51. The ALJ still found that Plaintiff has significant mental limitations, for which he imposed substantial restrictions in formulating his RFC. R. at 52. Plaintiff claims the ALJ erred in partially rejecting his testimony.

The ALJ must examine the claimant's credibility to properly assess his RFC. *Pearsall*, 274 F.3d at 1217–18. The ALJ must base his credibility findings on the entire record, including medical records and statements by the claimant. 20 C.F.R. § 416.929(c)(3). The district court must defer to the ALJ's credibility findings "provided that this determination is supported by 'good reasons and substantial evidence.'" *Turpin*, 750 F.3d at 993.

Here, the ALJ articulated at least three well-supported reasons for discounting Plaintiff's credibility. First, Plaintiff admitted engaging in several daily activities, described above, that were inconsistent with allegations of total disability. R. at 80, 82–83, 88, 199, 321, 342, 363. Although he ceased taking classes for his master's program, he did so not because of his impairments but because he ran out of money. R. at 70. The ALJ did not err in finding these activities contradicted Plaintiff's claims that his mental impairments were disabling. *See Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (finding certain acts, including taking care of personal needs, doing laundry, cleaning the house, driving a car, running errands, going out alone, going shopping, managing finances, watching television, and occasionally reading books, inconsistent with subjective allegations of disability).

Second, Plaintiff has a somewhat sporadic work history with no substantial earnings in most years even before the alleged onset of disability. R. at 172–78. The ALJ could reasonably draw the conclusion that Plaintiff's motivation to work was questionable, thus lessening his

credibility as a witness. *See Bernard*, 774 F.3d at 489 (finding that a sporadic work history for multiple employers was sufficient for the ALJ to discredit a claimant's credibility).

Third, medical evidence of record conflicts with Plaintiff's testimony about his concentration and memory. Plaintiff testified that he had trouble concentrating and that his memory was impaired, R. at 79, 85, but Dr. Ceniceros opined that his concentration was within normal limits and that his memory was intact, *e.g.* R. at 333–34. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (permitting the ALJ to discredit testimony inconsistent with medical reports).

The Court emphasizes that the ALJ did *not* conclude that Plaintiff was free from mental limitations; the ALJ found Plaintiff had substantial limitations, just not to the full extent alleged. Because the ALJ supported this narrow conclusion with "'good reasons and substantial evidence,'" *Turpin*, 750 F.3d at 993, the Court defers to his credibility determination.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying Title XVI benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  May 20, 2015               /s/ Greg Kays
                                  GREG KAYS, CHIEF JUDGE
                                  UNITED STATES DISTRICT COURT